**UNITED STATES, Appellant,**

v.

**Joel L. McKEAN et al., Appellees.**

**No. 7455.**

District of Columbia Court of Appeals.

May 30, 1975.

Earl J. Silbert, U. S. Atty., John A. Terry, Barry L. Leibowitz, and Donald L. Abrams, Asst. U. S. Attys., were on the Motion for Summary Reversal for appellant.

Glenn R. Graves, Washington, D. C., was on the Opposition to Motion for Summary Reversal for appellees.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges, in chambers.

NEBEKER, Associate Judge:

On February 16, 1973, appellees were charged in separate informations with attempted sodomy in violation of D.C.Cole 1973, §§ 22–103 and 22–3502. The trial court granted appellees' motions to dismiss the informations, ruling that the acts alleged in the informations were engaged in by consenting adults in the privacy of closed cubicles or rooms in the Regency Health Club and thus were outside the proscription of the sodomy statute. This appeal followed, and the government has moved for summary reversal. We grant the motion and reverse.

On the basis of testimony presented at the hearing, the trial judge concluded that

the defendants' alleged conduct was committed by consenting adults in private rather than in public and was therefore constitutionally protected under Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L. Ed.2d 349 (1972) and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Whether the doors of the cubicles or small rooms where the conduct charged allegedly took place were open or closed (a question which received a great deal of attention during the hearing) is beside the point due to the nature of this particular establishment.

■■■ Supreme Court decisions recognizing a right of privacy guaranteed by the Fourteenth Amendment include

"only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.' . . ." . . . This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. Cf. Eisenstadt v. Baird, 405 U.S. 438, 453–454, 92 S.Ct. 1029, [1038–1039,] 31 L.Ed.2d 349 (1972); id., at 460, 463–465, 92 S.Ct. [1029] at 1042, 1043–1044 (White, J., concurring); Stanley v. Georgia, supra, 394 U.S. [557,] at 568, 89 S.Ct. [1243] at 1249, 22 L.Ed.2d 542 (1969); Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, [1823,] 18 L.Ed.2d 1010 (1967); Griswold v. Connecticut, supra, 381 U.S. at 486, 85 S.Ct. [1678] at 1682; Prince v. Massachusetts, 321 U.S. 158, 166, 64 S. Ct. 438, [442,] 88 L.Ed. 645 (1944); Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, [1113,] 86 L.Ed. 1655

(1942); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, [573,] 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, [626,] 67 L.Ed. 1042 (1923) . . . .[1]

Thus, it is clear that the "right to privacy", as derived from certain "penumbras" of the guarantees in the Bill of Rights[2], is not without limit as to places and relationships.

The protection afforded by Stanley v. Georgia, [supra], is restricted to a place, the home. In contrast, the constitutionally protected privacy of family, marriage, motherhood, procreation, and child rearing is not just concerned with a particular place, but with a protected intimate relationship. Such protected privacy extends to the doctor's office, the hospital, the hotel room, or as otherwise required to safeguard the right to intimacy involved. . . . Obviously, there is no necessary or legitimate expectation of privacy which would extend to marital intercourse on a street corner or a theater stage.[3]

Whatever may be the applicability of the right of privacy decisions to sodomitic activity between consenting adults in private,[4] an issue we need not reach here, such activity carried on in a place which cannot in contemplation of law reasonably be considered private is not protected by a constitutional right to privacy.

■■■ This court on several occasions has held that the same "health club" involved in this case, namely, the Regency Health

---

1. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 65–66, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). See also United States v. 12 200-Ft. Reels of Film, 413 U.S. 123, 127 & n. 4, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

2. See Griswold v. Connecticut, supra 381 U.S. at 484, 85 S.Ct. 1678.

3. Parish Adult Theatre I v. Slayton, supra, note 1, 413 U.S. at 66 n. 13, 93 S.Ct. at 2640.

4. See Harris v. United States, D.C.App., 315 A.2d 569, 575 (1974) (en banc). Cf. Rittenour v. District of Columbia, D.C.Mun. App., 163 A.2d 558 (1960).

Club, is not a private place but is rather "a commercial establishment open to the public".[5] At the time of these alleged offenses, membership in the Regency still could be obtained by the public "with minimum formality and modest fees."[6] In fact, in Harris v. United States, D.C.App., 315 A.2d 569, 574 (1974), the court said that acts of sodomy committed in such an establishment are "not protected by any recognized right to privacy." Because of the public nature of the establishment where the alleged conduct took place, appellees may not claim a right to or reasonable expectation of privacy in the constitutional sense of the word, regardless of whether the cubicles in which the alleged acts occurred were in fact "secluded".[7]

In light of the special nature of the constitutional right to privacy and past decisions of this court interpreting that right,[8] appellant is clearly entitled to reversal of the lower court's order dismissing the informations in these cases. Summary disposition of this appeal is therefore appropriate,[9] and, accordingly, the motion for summary reversal is granted, and the cases are remanded with directions to reinstate the informations.

So ordered.

5. Harris v. United States, supra note 4, at 574. See also Harris v. United States, D.C. App., 293 A.2d 851, 855 (1972) (Kern, J., concurring), vacated, Dec. 15, 1972. Cf. Herland v. District of Columbia, D.C.Mun.App., 182 A.2d 362, 363 (1962) (unlocked men's washroom in a hotel held to be public place); United States v. Montalvo, D.C.App., No. 7301 (unpublished judgment, Dec. 13, 1974) (rear of adult bookstore and movie arcade held not to be a place where right of privacy protects attempted consensual adult sodomy).

6. Harris v. United States, supra, 315 A.2d at 574 n. 15. See also Harris v. United States, supra, 293 A.2d at 854. The only requirement for entry of "non-members" into the Regency was that an adult have a sponsor or a membership card from another "bath

house". Membership was obtained by filling out several signature cards with one's name and address. On each visit members paid a small fee and signed another card which was used to verify the signature.

7. Cf. Paris Adult Theatre I v. Slaton, supra note 1, 413 U.S. at 66-67, 93 S.Ct. at 2640: "The idea of a 'privacy' right and a place of public accommodation are, in this context [obscene movie shown in an "adult" theater], mutually exclusive."

8. See also United States v. Carson, D.C.App., 319 A.2d 329, 332 (1974).

9. See Ashe v. Robinson, 146 U.S.App.D.C. 220, 222, 450 F.2d 681, 683 (1971).